UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                              :

UNITED STATES OF AMERICA
*ex rel.* DANIEL FELDMAN,             :

          Plaintiff/Relator,     :     03 Civ. 8135 (WHP)

         -against-          :     MEMORANDUM & ORDER

WILFRED VAN GORP and        :
CORNELL UNIVERSITY,
                            :

          Defendants.
                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/9/10

WILLIAM H. PAULEY III, District Judge:

        Defendants Dr. Wilfred van Gorp ("van Gorp") and Cornell University

("Cornell") move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or,

alternatively, for a new trial pursuant to Fed. R. Civ. P. 59 following a jury verdict in favor of

Plaintiff/Relator Daniel Feldman ("Feldman"). Feldman filed this <u>qui tam</u> action alleging that

van Gorp and Cornell submitted false claims to obtain federal grant funds from the National

Institutes of Health ("NIH"). Feldman claimed that a grant application titled "The

Neuropsychology of HIV/AIDS" and its Continuation Renewals were fraudulent. Following an

eight-day trial, a jury returned a verdict in favor of Feldman on the Continuation Renewals for

years 3, 4, and 5 of the grant. Defendants assert that Feldman presented insufficient evidence at

trial to support the jury's findings, and seek judgment as a matter of law or, alternatively, a new

trial. For the following reasons, Defendants' motion is denied.

DISCUSSION

Familiarity with this Court's prior memoranda and orders is presumed. See

United States ex rel. Feldman v. van Gorp, No. 03 Civ. 8135, 2010 WL 2911606 (S.D.N.Y. July

8, 2010) ("Feldman IV"); United States ex rel. Feldman v. van Gorp, 674 F. Supp. 2d 475

(S.D.N.Y. 2009) ("Feldman II"), reconsideration denied by United States ex rel. Feldman v. van

Gorp, No. 03 Civ. 8135  (WHP), 2010 WL 1948592 (S.D.N.Y. May 3, 2010) ("Feldman III");

Feldman v. van Gorp, No. 03 Civ. 8135 (WHP), 2008 WL 5429871 (S.D.N.Y. Dec. 19, 2008)

("Feldman I").


I. Judgment as a Matter of Law

    a. Legal Standard

        A movant seeking to set aside a jury verdict faces a "high bar." Lavin-McEleney

v. Marist Coll., 239 F.3d 476, 479 (2d Cir. 2001). "Where, as here, a jury has deliberated in a

case and actually returned its verdict, a district court may set aside the verdict pursuant to Rule

50 only where there is 'such a complete absence of evidence supporting the verdict that the jury's

findings could only have been the result of sheer surmise and conjecture, or there is such an

overwhelming amount of evidence in favor of the movant that reasonable and fair minded men

could not arrive at a verdict against him.'" AMW Materials Testing, Inc. v. Town of

Babylon, 584 F.3d 436, 456 (2d Cir. 2009) (quoting Cross v. N.Y. City Transit Auth., 417 F.3d

241, 248 (2d Cir. 2005)).  In considering a motion for judgment as a matter of law, courts must

"consider the evidence in the light most favorable to the party against whom the motion was

made and . . . give that party the benefit of all reasonable inferences that the jury might have

2

drawn in his favor from the evidence." Black v. Finantra Capital, Inc., 418 F.3d 203, 208 (2d Cir. 2005) (quotation omitted). "A court evaluating such a motion 'cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.'" Black, 418 F.3d at 209 (quoting Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001)).

      b.  Materiality

To establish that a false statement is material, a plaintiff must show that the statement had the "'natural tendency to influence, or [is] capable of influencing, the decision of the decision[-]making body to which it was addressed.'" U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty., N.Y., 668 F. Supp. 2d 548, 569 (S.D.N.Y. 2009) (quoting Neder v. U.S., 527 U.S. 1, 16 (1999)); see also Feldman II, 674 F. Supp. 2d at 480-81.  This test "focuses on the potential effect of the false statement when it is made rather than on the false statement's actual effect after it is discovered." Feldman II, 674 F. Supp. 2d at 480.

Defendants argue that this Court should set aside the jury's determination that the Continuation Renewals for years 3, 4, and 5 contained material misrepresentations because there was no evidence to support such a finding.  Specifically, Defendants maintain that there was no testimony from an NIH official with decision-making authority and that the documentary evidence relied on by Feldman was insufficient.  Those arguments are misplaced.

Feldman presented significant documentary evidence to support a finding of materiality.  Defendants' counsel read the following language from the parties' Joint Stipulation to the jury:

> After the initial funding year, a grantee must submit a noncompetitive renewal application [Continuation Renewal] to receive the additional recommended funding for each year thereafter.  Each renewal includes a

3

> progress report which NIH expects will provide information about the
> trainees activities during the previous funding period.

(Tr. at 1191.) Thus, the Continuation Renewal is a prerequisite to receipt of funding for

successive years of a grant.

The parties also stipulated that NIH guidelines and instructions were applicable to

the Progress Reports contained in the Continuation Renewals for the grants. Those guidelines

and instructions were received in evidence without objection. (Tr. at 681-82.) And, the plain

language of the NIH guidelines and instructions make clear what is material to NIH in evaluating

Progress Reports:

> Progress Reports provide information to awarding component staff that is
> essential in the assessment of changes in scope or research objectives . . . from
> those actually funded. They are also an important information source for the
> awarding component staff in preparing annual reports, in planning programs,
> and in communicating scientific accomplishments to the public and to
> Congress.

(Reply Declaration of Tracey A. Tiska dated Oct. 20, 2010 ("Tiska Reply Decl.") Ex. 1:

Plaintiff's Exhibit 10: Instructions for PHS 2590 ("PHS 2590") at 7.)

Moreover, the NIH Progress Report instructions request information that Feldman

alleged Defendants should have included. Specifically, NIH directs grantees to:

> [h]ighlight progress in implementation and developments or changes that have
> occurred. Note any difficulties encountered by the program. Describe
> changes in the program for the next budget period, including changes in
> training faculty and significant changes in available space and/or facilities. . . .

(PHS 2590 at 7.) NIH instructions also require inclusion of "information describing which, if

any, faculty and/or mentors have left the program." (Tiska Reply Decl. Ex. 2: Defendant's

Exhibit B: T-32 Funding Announcement at VI.3.) Thus, the documentary evidence amply

4

supports the jury's finding on materiality.

Defendants also argue that the testimony of Dr. Robert Bornstein ("Bornstein"), a member of the initial review group ("IRG") recommending approval of the grant, was unrebutted. (See generally Tr. at 1187-1255.) But, Bornstein had no role in reviewing the Progress Reports. (Tr. at 1228-29.) Indeed, the Joint Stipulation Cornell's counsel read to the jury underscores that point:

> The renewal applications are reviewed only by the institute's program and grants manager officers. There is no review by an IRG like the one done on the initial grant application.

(Tr. at 1191.) Moreover, Bornstein had no independent recollection of reviewing the Grant Application. (Tr. at 1228-29.)

The absence of testimony by a government official supporting a finding of materiality does not mean that the jury was required to accept Bornstein's testimony. As Judge Easterbrook explained in United States v. Rogan, "a statement or omission is capable of influencing a decision even if those who make the decision are negligent and fail to appreciate the statement's significance." 517 F.3d 449, 452 (7th Cir. 2008). "[L]aws against fraud protect the gullible and the careless—perhaps especially the gullible and the careless—and could not serve that function if proof of materiality depended on establishing that the recipient of the statement would have protected his own interests." Rogan, 517 F.3d at 452.

In evaluating whether the Progress Reports had a "natural tendency" to influence the decision-making body, the jury was well within its bounds to credit NIH's unambiguous guidelines and instructions over Bornstein's conclusory testimony that little in the Grant Application really would have mattered to him had he remembered reviewing it at all.

Accordingly, Feldman offered sufficient evidence for the jury to find materiality as to the
Continuation Renewals for years 3, 4, and 5 of the grant.

      c.  Scienter

         To establish liability under the FCA, a plaintiff/relator must prove that the
defendant made the false claim "knowingly."  Mikes v. Straus, 274 F.3d 687, 696 (2d Cir. 2001).
 "The [False Claims] Act defines 'knowingly' as either: (1) possessing actual knowledge; (2)
acting in deliberate ignorance of falsity; or (3) acting in reckless disregard of falsity."  Mikes, 274
F.3d at 696 (citing 31 U.S.C. § 3729(b)).  "[N]o proof of specific intent to defraud is required."
31 U.S.C. § 3729(b).

         Feldman presented sufficient evidence at trial for the jury to find that Defendants
acted knowingly.  First, Dr. Elizabeth Ryan ("Ryan"), van Gorp's Chief Fellow, testified that she
drafted the Year 3 Continuation Renewal under van Gorp's direction.  (Tr. at 203-04.)
Specifically, Ryan testified that van Gorp instructed her to misrepresent the Fellows' activities in
the Progress Report:

> He gave me basically a template and wanted me to put some
> information into the template about what had gone on that year.  And
> I read what was written and I said to him, 'But we never did this,' and
> he said 'Don't worry about it.'

(Tr. at 203.)

         Feldman also introduced other evidence of affirmative misrepresentations.  For
example, Defendants stated in the Progress Report for year 3 that:

> There have been no alterations in the courses or training program
> from that listed in the original applications, except for the addition of
> two courses . . . .  In addition to the didactic courses outlined in our
> original application (all of which are still applicable), we have been
> able to offer additional courses. . . .

(Plaintiff's Ex. 3: Application for Continuation of Grant dated Jan. 27, 1999 ("Year 3 Continuation Renewal") at 7-8.)  Similarly, the Progress Reports for years 4 and 5 stated that "[t]he core structure of our training program has remained the same as in years past and to that described in our initial application. . . . This includes a core neuropsychology seminar . . . [and] an HIV/AIDS journal club."  (Plaintiff's Ex. 4: Application for Continuation Grant dated Feb. 7, 2000 ("Year 4 Continuation Renewal") at 4; Plaintiff's Ex. 5: Application for Continuation Grant dated Jan. 30, 2001 ("Year 5 Continuation Renewal") at 5.)  But, van Gorp himself conceded that alterations to the program had been made:

> [W]hen the grant was envisioned, it was envisioned as a course for a larger group of people in which speakers would come and so forth. But I modified it . . . so we actually did in essence a tutorial on the neuropsychology of HIV where we gave [Ryan] the book I edited. . . . We didn't just give them a book.  They essentially got one-on-one tutoring in the neuropsychology of HIV that covered all the relevant topics.

(Tr. at 777.)  In addition, Feldman and several other Fellows testified that the courses in the Grant Application were never taught and that the Training Committee did not meet.  (Tr. at 135-37, 363-64, 613.)  Feldman also presented evidence that Defendants knowingly made omissions. In particular, van Gorp testified that several individuals listed as "key personnel" left the program (Tr. at 712-13, 720-21), but the Continuation Renewals omitted mention of their departures.

In sum, the jury had ample evidence from which to find that Defendants acted knowingly in making false statements in the Year 3, Year 4, and Year 5 Progress Reports.

II. New Trial

    a. Legal Standard

        "In contrast to a motion for judgment as a matter of law, a motion for a new trial pursuant to Fed. R. Civ. P. 59 may be granted by the district court, although there is evidence to support the jury's verdict, so long as the district court determines that, in its independent judgment, 'the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice.'" Nimely v. City of N.Y., 414 F.3d 381, 392 (2d Cir. 2005) (quoting Munafo v. Metro Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004)).  Although a court is free to weigh the evidence and need not view it in the light most favorable to the verdict winner on a Rule 59 motion, it should "rarely disturb a jury's evaluation of a witness's credibility." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998).  "A court considering a Rule 59 motion for a new trial must bear in mind . . . that the court should only grant such a motion when the jury's verdict is egregious," DLC Mgmt. Corp., 163 F.3d at 134, or "the verdict is a miscarriage of justice," Parrish v. Sollecito, 280 F. Supp. 2d 145, 165 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

    b. Weight of the Evidence

        Defendants argue that, even if the evidence on materiality and scienter was sufficient to support the jury's verdict, this Court should find that the verdict was against the weight of the evidence.  However, there was ample evidence to support the jury's findings.  In addition, this Court observed the demeanor of the trial witnesses.  Feldman was as credible and honest a witness as this Court has seen.  His testimony was compelling.  In contrast, van Gorp's presentation bore indicia of a well-rehearsed performance.  It was within the jury's discretion to

8

discount his stagecraft.

Accordingly, Defendants have failed to show that the jury's verdict was erroneous, let alone egregious, or that it constitutes a miscarriage of justice.  See DLC Mgmt. Corp., 163 F.3d at 134.

    c.  Measure of Damages

Finally, Defendants contend that a new trial is warranted because this Court decided on the parties' motions in limine that, "if the jury finds Defendants liable for making materially false statements with the requisite scienter, the proper damages are the grant monies awarded as a result of each false statement."  Feldman IV, 2010 WL 2911606, at *5.  Defendants contend that ruling improperly removed the determination of damages from the jury. Defendants' arguments, in large part, retread arguments presented on the in limine motions.  This Court analyzed the damages issue in its July 8, 2010 Memorandum and Order, and sees no reason to revisit it here.  See Feldman IV, 2010 WL 2911606, at *5.

Defendants' only new argument is that Feldman did not prove "a direct causal relationship . . . between the funds received by Defendants and their false statements," Longhi v. Lithium Power Tech., Inc., 575 F.3d 458, 473 (5th Cir. 2009), because the jury found liability on the Continuation Renewals but not on the Initial Grant Application.  That argument, however, presents a distinction without a difference.  The Continuation Renewals, as discussed above, were prerequisites for continued funding.  The jury found that Defendants knowingly made false statements in the Continuation Renewals for years 3, 4, and 5 and, thus, the Government did not get the "benefit of the bargain" because its conditions for funding were not satisfied.  Longhi, 575 F.3d at 473; see also U.S. ex rel. Purcell v. MWI Corp., 520 F. Supp. 2d 158, 178-79 (D.C.

Cir. 2007).

The jury was exceedingly careful in parsing the Grant Application and each of the Continuation Renewals.  It did not find liability on the Grant Application or the first Continuation Renewal.  Rather, the jury only held van Gorp and Cornell liable for their knowing material misrepresentations in the Continuation Renewals for years 3, 4, and 5 as descriptions of the program and its reality diverged in many substantive respects.  Accordingly, a new trial is not warranted.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, alternatively, for a new trial pursuant to Fed. R. Civ. P. 59 is denied.

Dated:  December 9, 2010
        New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of record*:

Michael J. Salmanson, Esq.
Scott B. Goldshaw, Esq.
Salmanson Goldshaw, PC
Two Penn Center
1500 J.F.K. Blvd., Suite 1230
Philadelphia, PA 19102
*Counsel for Plaintiff/Relator*

Nina Beattie, Esq.
Brune & Richard LLP
80 Broad Street
New York, NY 10004
*Counsel for Defendant van Gorp*

Tracey Tiska, Esq.
R. Brian Black, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
*Counsel for Defendant Cornell University*